UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------X
LARRY FINTZ,

                *Plaintiff*,

  -against-                        **MEMORANDUM AND ORDER**

                                   22-CV-00337(KAM)

KILOLO KIJAKAZI
ACTING COMMISSIONER OF
SOCIAL SECURITY,

                *Defendant*.

---------------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

      Plaintiff Larry Fintz ("Plaintiff") appeals the final decision of the Commissioner of Social Security ("Defendant" or the "Commissioner") finding him not disabled within the meaning of the Social Security Act (the "Act") and not entitled to disability insurance benefits under Title II of the Act.  Plaintiff and the Commissioner have cross moved for judgment on the pleadings.  For the reasons herein, Plaintiff's motion is **GRANTED** the Commissioner's motion is **DENIED** and the case is **REMANDED** for further proceedings consistent with this Memorandum and Order.

## Background

      The parties have filed a joint stipulation of relevant

1

facts, which the court has reviewed and incorporates by reference. (*See* ECF No. 11, Stipulation of Facts ("Stip.").) Here, the court briefly recounts the facts relevant to the instant motions.

Plaintiff was born in 1968 and was employed as a sanitation worker until May 4, 2018, at which time he stopped working because of a claimed disability. (Stip. ¶¶ 1-2.) He continued to receive sick leave until June of 2020, and did not perform any work at all between May of 2018 and June of 2020. (*Id.* at 2.) He filed an application for disability insurance benefits on April 27, 2020. (ECF No. 8, Administrative Transcript ("Tr.") at 10.) Plaintiff alleged disability beginning on May 4, 2018, due to a right shoulder injury and a spinal disease. (*Id.* at 10, 199.)

A hearing was held on in June 2021 before the ALJ, and in a decision dated July 7, 2021, the ALJ found Plaintiff not disabled. (Stip. ¶ 4.) The ALJ determined that Plaintiff had the following impairments that severely limited his ability to perform basic work activities: osteoarthritis of the right shoulder, status-post replacement surgery; degenerative disc disease of the cervical and lumbar spine; and clinical obesity. (Tr. at 13.) The ALJ concluded, however, that Plaintiff's kidney stone, left-knee derangement, hypertension, hyperlipidemia, diabetes, and asthma were not severe, alone or in combination, and thus did not

significantly limit his physical ability to do basic work activities. (*Id.* at 13-14.)

Plaintiff appealed the ALJ's decision to the Appeals Council, and on December 28, 2021, the Appeals Council denied Plaintiff's request for review, making the decision by ALJ the final determination of the Commissioner. (*Id.* at 1.)

Plaintiff initiated the instant action on January 20, 2022. (ECF No. 1, Complaint.) On August 2, 2022, Defendant filed the Administrative Transcript and the parties fully briefed the entire set of motion papers. (ECF Nos. 8, Tr; 9, Memorandum of Law in Support of Plaintiff's Motion for Judgement on the Pleadings, ("Pl. Mem."); 10, Memorandum of Law in Support of Defendant's Cross-Motion for Judgment on the Pleadings and in Opposition to Plaintiff's Motion for Judgment on the Pleadings, ("Def. Mem."); 11, Stip.)

## **Standard of Review**

A claimant must be found by the Commissioner to be "disabled" within the meaning of the Act to receive benefits. *See* 42 U.S.C. §§ 423(a), (d). A claimant qualifies as disabled when he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* §

423(d)(1)(A); *Shaw v. Chater*, 221 F.3d 126, 131–32 (2d Cir. 2000). The impairment must be of "such severity" that the claimant is unable to do his previous work or engage in any other type of substantial gainful work. 42 U.S.C. § 423(d)(2)(A). The regulations promulgated by the Commissioner set forth a five-step sequential evaluation process for determining whether a claimant meets the Act's definition of disabled. *See* 20 C.F.R. § 404.1520. The Commissioner's process is essentially as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (quoting *GreenYounger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003)); *accord* 20 C.F.R. § 404.1520(a)(4).

During this five-step process, the Commissioner must consider whether "the combined effect of all of [a claimant's] impairments," including those that are not severe, would be of sufficient severity to establish eligibility for Social Security benefits. 20 C.F.R. § 404.1523(c). "The claimant has the general burden of proving . . . his or her case at steps one through four of the sequential five-step framework established in the SSA regulations." *Burgess*, 537 F.3d at 128 (internal quotation marks

4

and citations omitted).  "However, because a hearing on disability benefits is a nonadversarial proceeding, the ALJ generally has an affirmative obligation to develop the administrative record."  *Id.* (internal quotation marks and alteration, and citations omitted).  "The burden falls upon the Commissioner at the fifth step of the disability evaluation process to prove that the claimant, if unable to perform [his] past relevant work [and considering his residual functional capacity, age, education, and work experience], is able to engage in gainful employment within the national economy."  *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).  "The Commissioner must consider the following in determining a claimant's entitlement to benefits: '(1) the objective medical facts [and clinical findings]; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability . . . ; and (4) the claimant's educational background, age, and work experience.'"  *Balodis v. Leavitt*, 704 F. Supp. 2d 255, 262 (E.D.N.Y. 2001) (quoting *Brown v. Apfel*, 174 F.3d 59, 62 (2d Cir. 1999)) (alterations in original).

Unsuccessful claimants for disability benefits may bring an action in federal court seeking judicial review of the Commissioner's denial of their benefits.  42 U.S.C. §§ 405(g), 1383(c)(3).  The reviewing court does not have the authority to conduct a *de novo* review and may not substitute its own judgment for that of the ALJ, even when it might have justifiably reached

a different result.  *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).  Rather, "[a] district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error."  *Burgess*, 537 F.3d at 127 (internal quotation marks omitted) (quoting *Shaw*, 221 F.3d at 131).  "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts 'only if a reasonable factfinder would *have to conclude otherwise*.'"  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (citations omitted).  Inquiry into legal error requires the Court to ask whether "the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the [Social Security] Act."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (second alteration in original) (internal quotation marks omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)).

## DISCUSSION

### I.   ALJ's Disability Determination

Using the five-step sequential process, the ALJ determined at step one that the Plaintiff had not engaged in substantial gainful activity since the alleged onset date of May 4, 2018.  (Tr. at 13.)  At step two, the ALJ determined that the Plaintiff suffered from the severe impairments of osteoarthritis

of the right shoulder, status-post replacement surgery; degenerative disc disease of the cervical and lumbar spine; and clinical obesity which limit Plaintiff's ability to perform basic work activities. (*Id.*)

At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526). (*Id.* at 14.) Specifically, Plaintiff's spinal impairments do not satisfy the requirement of listing 1.15 (defining disorders of the skeletal spine) and his right shoulder joint replacement does not satisfy listing 1.18 (defining abnormalities of a major joint in any extremity). (*Id.*)

At step four, the ALJ found that Plaintiff had the RFC to perform a wide range of light work, with the following limitations: (1) he can only occasionally climb ladders, ropes, and scaffolds; (1) can only occasionally kneel, crouch, and crawl but can frequently balance and stoop; (3) he can only occasionally reach overhead with his right upper extremity, but is not limited in regards to reaching in other directions or reaching in any direction with his left upper extremity. (*Id.* at 15.)

To make his determination that Plaintiff had the RFC to perform a wide range of light work with some limitations, the ALJ considered medical records which included: a consultative

examination report authored by Dr. Ram Ravi, the reports of non-examining state agency medical consultants Drs. Lawrence and Lee, and the treatment notes and medical assessment created by Plaintiff's treating physician, Dr. Jeffrey Marc. (*Id.* at 16-19.) Plaintiff's medical records also included an MRI of Plaintiff's right shoulder and cervical spine from May of 2018 and an MRI of his left knee from March of 2020. (*Id.*)  After consideration of this evidence the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. (*Id.* at 17.)

Finally, at step five of the sequential evaluation process, the ALJ found that based on Plaintiff's age, education, prior work experience, and RFC, that Plaintiff was unable to return to his past work as a sanitation worker due to it being too physically demanding. (*Id.* at 20.)  The ALJ, however, also determined that there were other jobs which exist in significant numbers in the national economy that Plaintiff could transition into. (*Id.* at 22.)  The ALJ considered the testimony of the vocational expert in arriving at this conclusion. (Id.)  The vocational expert testified that, given Plaintiff's RFC and limitations, Plaintiff could perform the requirements of

representative occupations such as a hand packager, sorter, or price marker. (*Id.* at 21.)  Thus, the ALJ concluded that Plaintiff was not disabled within the meaning of the Act, as defined in 20 C.F.R. 404.1520(g).  (*Id.* at 22.)

## II.  ALJ Failed to Support RFC With Substantial Evidence

The ALJ's RFC determination must be supported by substantial evidence.  "Substantial evidence is more than a mere scintilla," and must be relevant evidence that a "reasonable mind might accept as adequate to support a conclusion." *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (internal quotation marks omitted) (citing *Richardson v. Perales*, 420 U.S. 389, 401 (1971)).  If there is substantial evidence in the record to support the Commissioner's factual findings, those findings must be upheld.  42 U.S.C. § 405(g).

Medical records, Plaintiff's testimony as to his own RFC, or the testimony of a vocational expert cannot alone provide substantial evidence for an RFC determination.  Rather, an "ALJ's RFC determination must be supported by a medical opinion in the record at that time." *Pearson v. Comm'r of Soc. Sec.,* No. 20-cv-3030(AMD), 2021 WL 3373132, at 4 (E.D.N.Y. Aug. 3, 2021).  "[A]n RFC determination is a medical determination, an ALJ who makes an RFC determination in the absence of a supporting expert medical opinion has improperly substituted his own opinion for that of a physician and has committed legal error." *Jackson v. Berryhill*,

No. 18-CV-04569, 2019 WL 4593648, at 8 (S.D.N.Y. Sept. 23, 2019) (remanding because "an ALJ is not qualified to assess a claimant's RFC on the basis of bare medical findings, and as a result an ALJ's determination of RFC without a medical advisor's assessment is not supported by substantial evidence.").

Plaintiff's medical record contains four medical opinions. (Tr. at 19.) First, the ALJ found the opinion of Dr. Ravi (consultative examiner) "persuasive, and [thus] it [has] been considered in formulating the residual functional capacity." (*Id.*) Next, the ALJ found the opinions of Drs. Lawrence and Lee (non-examining experts) "to be generally persuasive, and . . . incorporated most of these assessments into the above residual functional capacity." (*Id.*) Finally, the opinion of Dr. Marc (Plaintiff's treating physician) was deemed "not persuasive, and has not been incorporated into the above residual functional capacity assessment." (*Id.* at 20.)

Plaintiff contends that the ALJ erred in supporting his RFC determination with the medical opinions of Dr. Ravi (consultative examiner) and Drs. Lawrence and Lee (non-examining consultative experts) as opposed to that of Dr. Marc (treating physician.) (Pl. Mem. at 16. Specifically, Plaintiff alleges that Dr. Ravi's medical opinion does not constitute substantial evidence because, as a consultative examiner, he only examined Plaintiff on a single occasion, did not examine any of Plaintiff's

10

MRIs, and conveyed the results of his examination in an unclear functional evaluation. (*Id.*)  Plaintiff further alleges that the opinions of Drs. Lawrence and Lee, while constituting medical evidence, cannot rise to the level of substantial evidence, because neither doctor ever examined Plaintiff. (*Id.* at 17.)  The Court will address each of these points in turn.

### a. ALJ Improperly Relied on the Opinion of a Consultative Examiner

The ALJ failed to sufficiently address significant issues with Dr. Ravi's medical opinion and thus his opinion does not constitute substantial evidence on which the ALJ may rely on while formulating Plaintiff's RFC.  Not all medical opinions are treated equally for the purposes of supporting an ALJ's RFC determination as the courts have "frequently 'cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination.'" *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019)(quoting *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013)).  Additionally, the opinion of a consultative physician who "did not review important medical records . . . cannot constitute . . . substantial evidence to support an RFC." *Benitez v. Comm'r of Soc. Sec.*, No. 20-CV-5026 (RWL), 2021 WL 4239244 at *17 (S.D.N.Y. Sept. 17, 2021).  Courts have consistently decided that when consultative physicians fail to read a claimant's MRI results prior to formulating a medical opinion, their opinion

cannot constitute substantial evidence. *See Burgess* 537 F.3d 117, 131-32 (2d Cir. 2008)(deciding that the consultative physician's failure to read an MRI in the claimant's medical record rendered the doctor's opinion incapable of being considered substantial evidence); *see also Ingrassia v. Colvin*, 239 F.Supp.3d 605, 625 (E.D.N.Y. 2017); *Menard v. Comm'r of Soc. Sec.*, 520 F.Supp.3d 294, 295-96 (E.D.N.Y. 2021)(finding that a consultative examiner's failure to examine plaintiff's MRI was evidence that the ALJ's reliance on the opinion was misplaced.)

Furthermore, the use of vague and unclear terms such as "moderate" or "mild" within an expert's medical opinion, in reference to a claimant's functional limitations, "does not permit the ALJ, a layperson notwithstanding [the ALJ's] considerable and constant exposure to medical evidence, to make the necessary inference . . ." that a claimant has a specific RFC. *Curry v. Apfel*, 209 F.3d 117, 123-24 (2d Cir. 2000). An ALJ "may not rely on opinions that employ the terms 'moderate' and 'mild' absent additional information." *Blau v. Berryhill*, 395 F. Supp. 3d 266, 281 (S.D.N.Y. 2019); *Curry* at 123 (finding that the opinion of a consultative medical examiner using the terms "'moderate' and 'mild,' without additional information," "render[ed] it useless in evaluating whether [claimant could] perform sedentary work.").

Dr. Ravi "performed an internal medicine consultative examination of the claimant on October 26, 2020" and submitted a

medical opinion on Plaintiff's functional limitations. (*Id.* at 16; 644-48.)  This report is the only report submitted by Dr. Ravi in the record and exclusively refers to the October 26, 2020 examination, demonstrating that he only examined Plaintiff on a single occasion. (*Id.* at 644.)  While heavy reliance on a one-time examiner's opinion does not automatically constitute a legal error, the Second Circuit has warned that heavily relying on an examiner who only examined a claimant once is inadvisable. *See Estrella*, 925 F.3d 90, 98 (2d Cir. 2019).

Additionally, the medical record contains three MRIs that the ALJ did not appear to give much weight to: an MRI of Plaintiff's right shoulder from May 24, 2018, an MRI of the cervical spine from May 25, 2018, and an MRI of Plaintiff's left knee from March 10, 2020. (*Id.* at 13.)  The first MRI, taken prior to Plaintiff's right shoulder surgery, revealed "severe osteoarthritis of the glenohumeral joint, with marked degenerative tearing of the labrum, tearing of the biceps of labral anchor, and tendinosis of the supraspinatus and infraspinatus tendons," although much of these findings are believed to have been addressed by Plaintiff's shoulder replacement surgery in October of 2018. (*Id.* at 16.)  The second MRI revealed "reversal of the normal cervical lordosis, loss of disc space height from C3 through C7 with endplate osteophyte formation, and disc bulges or protrusions from C3-4 through T2-3, with bilateral foraminal stenosis at C3-

13

4, central canal and foraminal stenosis at C4-5, and bilateral foraminal stenosis at C5-6 and C6-7." (*Id.*)  The third MRI revealed a joint disorder in claimant's left knee.  (*Id.*)

Dr. Ravi's four-page report addresses Plaintiff's medical history in only two sentences "[r]ight elbow pain, hypertension, and asthma.  Past hospitalizations and operations: In 2019, Presbyterian Hospital in Brooklyn for right shoulder surgery." (*Id.* at 645.)  Absent from the report is any reference to Plaintiff's past medical records, including the previously mentioned MRIs. (*Id.* at 644-48.)  Plaintiff alleges that Dr. Ravi "did not have the benefit of the cervical-spine MRI of May 2018 or the left-knee MRI of March 2020" when drafting his report.  (Pl. Mem. at 16.)  The ALJ does not address whether or not Dr. Ravi had access to Plaintiff's medical records when discussing the persuasiveness of Dr. Ravi's findings.  (Tr. at 19).  The Court agrees that there is not enough evidence of whether Dr. Ravi considered or saw the Plaintiff's MRI results when drafting his medical opinion.

Furthermore, when describing Plaintiff's functional restrictions, Dr. Ravi opined that the claimant would have "moderate" restrictions to perform overhead reaching with the right arm, to push or pull, and lift or carry. (*Id.* at 19; 648.)  The ALJ addressed the use of this vague term noting that Dr. Ravi did not use other available terms such as "marked" or "extreme" in

14

addition to "moderate." (*Id.* at 19.)  Such vague terms "[do] not permit the ALJ, a layperson notwithstanding [the ALJ's] considerable and constant exposure to medical evidence, to make the necessary inference . . ." that a claimant has a specific RFC. *Curry*, 209 F.3d 117, 123-24 (2d Cir. 2000).  By relying on Dr. Ravi's opinion, the ALJ would have had to engage in "sheer speculation" in order to determine what Dr. Ravi specifically meant by the term "moderate".  *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013).

Accordingly, the Court finds the ALJ's reliance on Dr. Ravi's opinion deficient because there is no indication that Dr. Ravi considered or saw Plaintiff's MRIs and Dr. Ravi utilized vague terms when describing Plaintiff's functional limitations.  The ALJ not only found that Dr. Ravi's opinion was persuasive but found that it "essentially translate[s] into the above residual functional capacity assessment," and thus it appears to suggest that Dr. Ravi's opinion constituted the bulk of the ALJ's determination of Plaintiff's RFC.  (*Id.*)  In light of these deficiencies, the ALJ's heavy reliance on the opinion constitutes a legal error.

Due to the deficiencies in Dr. Ravi's opinion and the ALJ's misplaced reliance on this opinion in forming Plaintiff's RFC determination, remand is appropriate for the ALJ to determine whether Dr. Ravi's assessment would change if Plaintiff's MRI

results were considered, and to clarify the meaning of "moderate" limitations in determining Plaintiff's RFC.

### b. ALJ Improperly Relied on the Opinion of Non-Examining Experts

In light of the deficiencies present in Dr. Ravi's opinion, the ALJ erred further by relying upon the opinions of two non-examining experts for his determination of Plaintiff's RFC. The opinion of a non-examining physician cannot constitute substantial evidence on its own and as such should not be heavily relied upon by an ALJ. *Avila v. Comm'r of Soc. Sec. Admin.*, No. 20-CV-1360, 2021 WL 3774317, at *20 (S.D.N.Y. Aug. 9, 2021). This is true even when there is more than one non-examining expert opinion. *Green-Younger*, 335 F.3d at 107–08 (2d Cir. 2003); *see also Scognamiglio v. Saul*, 432 F. Supp. 3d 239, 251 (E.D.N.Y. 2020)(determining that a non-examining expert's opinion, despite being consistent with much of the medical record and Plaintiff's own testimony, still cannot constitute substantial evidence alone on account of the expert not examining Plaintiff).

As discussed earlier, out of the four opinions in the record, the ALJ found the opinion of Dr. Ravi (consultative examiner) "persuasive," and the opinions of Drs. Lawrence and Lee (non-examining experts) "to be generally persuasive." (Tr. at 19.) The opinion of Dr. Marc (treating physician) was deemed "not persuasive, and [thus] has not been incorporated into the above

residual functional capacity assessment." (*Id.* at 20.)   Dr. Lawrence found that Plaintiff "would have a limited capacity to reach overhead, in front, or laterally, with the right upper extremity, but then, in his narrative discussion, stated only that the claimant 'is limited to occasional right overhead reaching due to shoulder pain.'" (*Id.* at 19; 65-67.)   Dr. Lee's opinion was largely consistent with Dr. Lawrence's, adding only that claimant "could only frequently balance or stoop." (*Id.* at 19; 81-84.) Reliance on non-examining experts constitutes a legal error even in a situation such as this where there are two non-examining experts in almost complete agreement. *Green-Younger,* 335 F.3d at 107 (2d Cir. 2003)("Similarly, the reports of two SSA consulting physicians, who did not examine [claimant], are also not substantial evidence.")   Without the support of an opinion by an expert who actually examined Plaintiff, however, the non-examining doctors' opinions cannot constitute substantial evidence. *Avila*, No. 20-CV-1360, 2021 WL 3774317, at *20 (S.D.N.Y. Aug. 9, 2021).

Accordingly, the Court finds because the ALJ relied only on Dr. Ravi's deficient report and the opinions of non-examining experts, the ALJ's RFC determination was not supported by substantial evidence. *Pearson,* No. 20-cv-3030(AMD), 2021 WL 3373132, at *4 (E.D.N.Y. Aug. 3, 2021)(holding that an ALJ's RFC determination must be supported by a medical opinion in the record).   As such, remand is appropriate for the purposes of

17

properly supporting ALJ's RFC determination with substantial evidence or revising the RFC determination.

### III. The ALJ Failed to Develop the Record

Additionally, the ALJ did not sufficiently fulfill his duty to develop the record because of his failure to address the aforementioned discrepancies in Dr. Ravi's report and his failure to address the inconsistency between Dr. Ravi's and Dr. Marc's opinions in regard to Plaintiff's standing and walking limitations. Disability insurance benefits hearings are supposed to be non-adversarial proceedings and as such, the ALJ generally has an affirmative obligation to develop the administrative record. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996). This remains true even when Plaintiff is represented by counsel. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). Generally, a failure of the ALJ to sufficiently develop the record may only be overcome by substantial evidence supporting the ALJ's RFC determination. *See Green v. Apfel*, 25 F. App'x 54, 56 (2d Cir. 2001)(holding that though the ALJ erred in failing to confirm whether a medical opinion took Plaintiff's pain into account, the error was harmless because substantial evidence contradicted Plaintiff's subjective assessment of pain); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29 (2d Cir. 2013)(holding that where the medical record was otherwise extensive and constituted substantial evidence, the ALJ was not required to acquire a medical source statement). When

there is not substantial evidence, the ALJ is required to resolve inconsistencies between medical opinions if those inconsistencies constitute a "gap" in the record. *Beckman v. Comm'r of Soc. Sec.*, No. 21-CV-1492 (PKC), 2022 WL 4451041 at *4 (E.D.N.Y. Sept. 23, 2022). Specifically, an ALJ is required to seek additional evidence or clarification from a medical source in the event that the report they submitted is too vague to determine whether Plaintiff is disabled. *Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp. 2d 330, 344 (E.D.N.Y. 2010); *see also Calero v. Colvin*, No. 16-cv-6582 (PAE), 2017 WL 4311034, at *9 (S.D.N.Y. Sept. 26, 2017) (holding that an ALJ has an independent duty to develop the record).

It was previously established that Dr. Ravi's opinion had serious deficiencies which rendered it insufficient to constitute substantial evidence. (Tr. at 19.) The non-examining experts' medical opinions are similarly vague and, in any case, the opinions, on their own, cannot constitute substantial evidence. (*Id.*) The ALJ erred in failing to recontact Dr. Ravi in order to clarify the term "moderate," and substantial evidence does not exist such that it could override the ALJ's duty. *Hilsdorf*, 724 F. Supp. 2d 330, 344 (E.D.N.Y. 2010). Moreover, because it is a legal error to rely on the opinion of a consultative examiner who did not have access to a claimant's MRI results, the ALJ also erred in not recontacting Dr. Ravi to review and consider Plaintiff's

19

three MRI results in rendering his opinion.  *See Burgess* 537 F.3d
117, 131-32 (2d Cir. 2008); *see also Ingrassia*, 239 F. Supp. 3d
605, 625 (E.D.N.Y. 2017).

Finally, Plaintiff alleges that the ALJ ignored a request
by Plaintiff's counsel to recontact Dr. Ravi and further clarify
these discrepancies.  (Pl. Mem. at 17.)   Plaintiff asserts that
Dr. Ravi failed to discuss Plaintiff's standing and walking
limitations anywhere in his opinion, despite Dr. Marc's opinion
that Plaintiff would be limited to less than sedentary work which
includes standing and walking limitations.  (Tr. at 51-52.)   Dr.
Marc specifies that Plaintiff is limited to standing or walking
"for less than two hours per projected eight-hour workday."  (*Id.*
at 20, 694.)   Dr. Ravi does not mention Plaintiff's standing or
walking limitations in his report. (*Id.* at 19, 644-650.)   The ALJ
refers to Dr. Ravi's opinion, and addresses Plaintiff's ability to
walk by stating that "claimant however does not use any assistive
device to ambulate, on his own testimony, and had no difficulty
with gait or station during the October 2020 internal medicine
consultative examination."  (*Id.* at 18.)   Dr. Ravi's and Dr. Marc's
opinions constitute the only two opinions from examining
authorities in the record.   The Court finds that there is an
inconsistency between the two opinions, because Dr. Marc's opinion
suggests that Plaintiff has limitations relating to standing and
walking and Dr. Ravi's opinion, through its silence, was

interpreted by the ALJ to suggest there are no such limitations. Although the duty to develop the record does not extend to all inconsistencies in a record, it will extend to those which constitute "obvious gaps" in the record. *Beckman*, No. 21-CV-1492 (PKC), 2022 WL 4451041 at *4 (E.D.N.Y. Sept. 23, 2022). An inconsistency between the opinions of the only two examining experts brought on by one examiner's failure to provide a functional assessment with regards to Plaintiff's standing and walking ability constitutes such a gap. *Fontanez v. Colvin*, No. 16-CV-01300 (PKC), 2017 WL 4334127 at *26 (E.D.N.Y. Sept. 28, 2017)(determining that conflicting medical evidence in the record and a lack of explicit functional assessments was grounds for an ALJ to re-contact medical sources).

As such, the ALJ is ordered, on remand, to seek clarification from Dr. Ravi as to whether he considered Plaintiff's MRI results in drafting his opinion, elaborate on his use of the term "moderate" describing Plaintiff's restrictions, and whether Plaintiff has any standing or walking limitations.

## IV. ALJ Failed to Show That There Exists Other Work in the National Economy That Plaintiff Could Do

Finally, the Court cannot conclude that the ALJ met his burden at step five of the sequential evaluation. At the fifth step, the Commissioner bears the burden to "show that there is work in the national economy that the claimant can do." *Poupore*

21

*v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).  An ALJ usually relies on the testimony of a vocational expert in order to meet this burden.  *Baker v. Berryhill*, No. 17CV8433 (AT) (DF), 2019 WL 1062110 at *35 (S.D.N.Y. Feb. 19, 2019).  Where the ALJ asks the vocational expert about a hypothetical claimant "whose limitations do not actually mirror those of the claimant," however, the ALJ does not meet the ALJ's burden to determine the jobs the claimant can perform.  *Id.*

Here, the ALJ asked the vocational expert if jobs exist for a hypothetical claimant "with the [Plaintiff's] age, education, work experience, and residual functional capacity."  (Tr. at 21.) Given the previously addressed issues with the ALJ's formulation of Plaintiff's RFC, the Court is unable to determine whether the limitations described by the RFC "actually mirror those of the [Plaintiff]."  *Baker*, No. 17CV8433 (AT) (DF), 2019 WL 1062110 at *35 (S.D.N.Y. Feb. 19, 2019).  Therefore, on remand, the ALJ must rectify the previously addressed issues with the opinions of Plaintiff's treating, non-treating, and non-examining physicians, the Plaintiff's RFC determination, including developing the record to do so, and if the ALJ comes to a different formulation of Plaintiff's RFC, that the ALJ provide an updated hypothetical to a vocational expert at step 5.  *Id.*

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED**, Defendant's motion for judgment on the pleadings in **DENIED**, and this case is **REMANDED** for further proceedings consistent with this Memorandum and Order. The Clerk of Court is directed to enter judgment remanding this case, and to close the case.

**SO ORDERED.**
DATED: April 15, 2023
Brooklyn, New York

_____
**HON. KIYO A. MATSUMOTO**
United States District Judge